82 F.3d 418
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bobby BAKER, Defendant-Appellant.
 No. 95-5344.
 United States Court of Appeals, Sixth Circuit.
 April 5, 1996.
 
 Before: MARTIN and BATCHELDER, Circuit Judges; and OLIVER, District Judge.*
 PER CURIAM.
 
 
 1
 On April 7, 1992, Clyde Harbin, handler of a narcotics sniffing dog [hereinafter "Jake"] was working Jake at the Federal Express air terminal facility in Memphis, Tennessee. As they worked, Jake alerted to a Federal Express package indicating the presence of a controlled substance in the package. The package was addressed to Beverly Smith at 4910 Brady Drive, Memphis, Tennessee.
 
 
 2
 Taking the package from the conveyor system, members of the Shelby County Sheriff's Department secured a search warrant for the package. Harbin opened the package. Inside the package were several sheets of crumpled newspaper and a smaller box. The smaller box contained three triangle-shaped bundles which were wrapped with fabric softener sheets and with tape securing the fabric softener sheets to the triangular bundles. Testimony at trial established that narcotics traffickers often wrap controlled substances in fabric softener sheets in an attempt to elude narcotics sniffing dogs by masking the odor of the illegal drugs. The triangular bundles contained 2,977 grams of 93% pure cocaine.
 
 
 3
 Officer Harbin donned a Federal Express delivery driver's uniform and driving a Federal Express truck delivered the package to 4910 Brady Drive. Prior to making the controlled delivery, Harbin removed the cocaine from the package replacing it with a sham substance. When he arrived at the Brady Drive address, Harbin knocked on the front door. Baker answered the door and told Harbin he had been waiting for the package. Baker told Harbin that his name was "Bobby Brown," and he signed for the package using that name. Upon returning to the delivery truck, Officer Harbin saw an individual upstairs who moved a curtain. Officer Harbin informed the officers who had been waiting in the back of the delivery truck that a second individual was upstairs. Shortly thereafter, the officers executed a search warrant and entered the residence. Officer Joseph Reed Eldridge saw Bobby Baker running out the back door as he entered the residence. A second group of officers also saw Baker running out the rear and Officer Calvin L. Brown apprehended him. When Officer Brown asked Baker for identification, Baker stated that it was upstairs in the bedroom. A second individual, Curtis Andre West, was apprehended in the upstairs bathroom.
 
 
 4
 In the search that ensued, no illegal drugs were found. However, several firearms were discovered as well as other items tending to show that narcotics trafficking was being conducted from the house. Officer Eldridge recovered a .38 caliber Smith & Wesson pistol which fell out of the back of a couch he had turned over. The officers recovered a beeper but no weapons on Baker's person. In the kitchen were two discarded Federal Express boxes containing fabric softener sheets and balled up newspapers from Memphis and California. Baker's fingerprints were on one of the discarded boxes. A quantity of small plastic bags were found in a first floor closet and testimony at trial established that this type of bag was used to package cocaine in small amounts. Other Federal Express documents were discovered, including one with a fictitious return addressee of "Westway Telecommunications" having the same address as an office no longer occupied by a rental car company that had once employed West.
 
 
 5
 In the master bedroom, Officer Wayne Goudy found two 12-gauge pump action shotguns under the mattress and a .22 caliber chrome-plated revolver on the top shelf of the closet. Also recovered from the master bedroom were 12-gauge shotgun shells, .45 caliber shells, pistol shells, .22 caliber shells, and 9 millimeter shells. Several pages of the March 11th issue of the Memphis Commercial Appeal were also found in the master bedroom. In a closet immediately outside of the master bedroom were several new Federal Express boxes.
 
 
 6
 In the other second floor bedroom, the officers found a .45 caliber automatic pistol. Also recovered from this bedroom were several documents with Baker's name on them, including a BellSouth Mobility cellular service application, a beeper rental agreement, a bill of sale for a vehicle, and a picture of Baker. The bill of sale for the vehicle was dated December 4, 1991, the beeper rental agreement was dated November 15, 1991, and the BellSouth Mobility application was dated November 21, 1991. A small amount of Baker's clothes and shoes were in this bedroom.
 
 
 7
 Officer Harbin was wearing a wire transmitter during the controlled delivery. Much of the transmission was garbled, but Officer Brown testified that he heard the conversation between Baker and Harbin during the delivery and that Baker stated that he was just visiting the residence. Baker gave a statement to the officers that he was just visiting the apartment owner that particular day. The manager of the Red Oaks Townhouses where this residence is located testified that she had seen Baker at the residence on several occasions and that West had told her that Baker was his brother. The manager also stated that the residence at 4910 Brady Drive had been rented to West since December 1991 and that she had never issued a key to Baker or seen him use a key to the townhouse.
 
 
 8
 West gave a statement that the residence and all the guns belonged to him. At trial, West testified that Baker had asked to stay with him. West said he had given Baker a key to the townhouse a couple of days prior to the execution of the search warrant. On cross-examination, West stated (as he had at the suppression hearing) that Baker possessed the key for two weeks prior to the search. West also testified that he had never seen the .38 caliber pistol found in the couch prior to the search.
 
 
 9
 On April 14, 1992, a federal grand jury charged Baker in Count 1 with aiding and abetting (in violation of 18 U.S.C. § 2) and with possession with the intent to distribute cocaine (in violation of 21 U.S.C. §§ 841(a)(1) and 846), and in Count 2 with aiding and abetting in the intentional carrying and use of a firearm during and in relation to a drug trafficking crime (in violation of 18 U.S.C. § 2 and 18 U.S.C. § 924(c)). No particular firearm was named in Count 2 as being connected with either defendant. Baker pled not guilty. Baker offered no proof at trial and moved for a judgment of acquittal at the end of the United States' case. The motion was denied. The jury returned a verdict of guilty as to both counts, but the jury was not asked to answer special interrogatories as to which firearm Baker "used or carried" in violation of Section 924(c).
 
 
 10
 In the presentence report prepared by the probation officer, the officer recommended a penalty on Count 2 of ten years' imprisonment believing that the offense involved a short-barreled shotgun. The district court sentenced Baker to ten years' imprisonment on Count 2, to run consecutively to the nine-year sentence the court ordered as to Count 1.
 
 
 11
 Baker raises two issues on appeal. Baker argues first that the evidence was insufficient to sustain his conviction for using or carrying a firearm in violation of 18 U.S.C. § 924(c). Baker contends that he did not possess or handle any of the weapons and did not have sufficient control over the townhouse to convict him under the "fortress theory." Second, Baker argues that the ten-year sentence he received as to Count 2 is legally erroneous. Baker claims that the jury did not convict him of using or carrying any particular weapon, but that the district court sentenced him on the basis of using or carrying a short-barreled shotgun. Baker concludes that the proper sentence should have been five years.
 
 
 12
 Under 18 U.S.C. § 3742(e)(1), this Court reviews a sentence ordered by a district court to determine whether it was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines. This Court accepts the district court's findings of fact unless clearly erroneous, but we review any legal questions de novo. 18 U.S.C. § 3742; United States v. Cochran, 14 F.3d 1128, 1131 (6th Cir.1994) (citation omitted).
 
 
 13
 Prior to oral argument, both parties filed a joint motion for remand in light of Bailey v. United States, 116 S.Ct. 501 (1995), and United States v. Riascos-Suarez, 73 F.3d 616, 623 (6th Cir.1996). We agree with the parties that remand is necessary. 18 U.S.C. § 924(c) provides for a mandatory sentence for persons who "use" or "carry" a weapon during or in relation to a drug trafficking crime. In Bailey, the Supreme Court defined "use" for purposes of Section 924(c) as an "active employment" of a weapon, including acts of "brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." 116 S.Ct. at 508. Even a person's reference to a firearm could be a "use." Id.
 
 
 14
 The definition of the term "carry" in Section 924(c), however, remained an open question after Bailey. This Court recently decided that in order for a person to be convicted of "carrying" a weapon during and in relation to a drug trafficking crime the person must physically transport the weapon and the weapon must be immediately accessible for active employment. United States v. Moore, 76 F.3d 111 (6th Cir.1996). We vacated Moore's conviction because a jury would not have necessarily found that the guns strewn about the bedroom were "carried" during and in relation to a drug trafficking crime given our definition of "carry" as requiring both immediate availability of the weapon and physical transportation. Id. at 113-14; see also United States v. Riascos-Suarez, 73 F.3d 616, 623 (6th Cir.1996) (holding that a weapon placed in driver's side of console in car next to defendant was a "carrying" for purposes of Section 924(c)).
 
 
 15
 In the instant case, the United States offered no evidence to show that either Baker or West actively employed the firearms at issue. The men did not brandish, display, fire, attempt to fire, handle or even mention the weapons during their arrests. Therefore, neither "used" the firearms as required by Section 924(c) and as interpreted under Bailey. Neither did Baker or his co-defendant West "carry" the weapons as defined by this Court in Moore and Riascos-Suarez. Although a jury might be able to find beyond a reasonable doubt that the weapons in the upstairs bedrooms were "immediately accessible" to Baker and West, the evidence shows that the men did not physically transport the weapons during or in relation to the drug crimes charged. Therefore, Baker's conviction under Section 924(c) is now contrary to law.
 
 
 16
 Thus, we AFFIRM as to Count 1. As to Count 2, we REVERSE because there is insufficient evidence to support a conviction on this count as the record now stands. In light of our reversal of the conviction on Count 2, we REMAND for resentencing.
 
 
 
 *
 The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation