**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Billy Joe COCHRAN, Defendant–
Appellant.**

No. 93–5100.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 12, 1993.

Decided Jan. 25, 1994.

John MacCoon (argued), Curtis L. Collier (briefed), David G. Dake, Asst. U.S. Attys., Chattanooga, TN, for plaintiff-appellee.

Kenneth L. Miller, Logan, Shockey, Miller & Bilbo, Cleveland, TN (argued and briefed), for defendant-appellant.

Before: GUY and RYAN, Circuit Judges; and MILES, Senior District Judge.*

* The Honorable Wendell A. Miles, Senior United States District Judge for the Western District of Michigan, sitting by designation.

RYAN, Circuit Judge.

The defendant, Billy Joe Cochran, appeals his 18–month sentence for conspiracy to possess methamphetamine, with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 846. · The sentence was imposed following the defendant's agreement to plead guilty to the conspiracy offense in exchange for the government's motion to dismiss the underlying section 841(a)(1) charge, and a charge under 18 U.S.C. § 924(c), firearms possession relating to a drug trafficking crime. The appeal presents three issues: whether the district court erred in sentencing the defendant as a minor, rather than minimal, participant; whether the district court erred in attributing to the defendant the total quantity of contraband found on both the defendant and his coconspirator; and whether the district court erred in finding that it was reasonably foreseeable to the defendant that his coconspirator would possess a firearm during the drug transaction?

We conclude that the district court's determination regarding the defendant's level of participation, and the quantity of drugs chargeable to the defendant were not clearly erroneous. However, the district court improperly concluded that it was reasonably foreseeable to the defendant that his coconspirator would be armed. Accordingly, we vacate the sentence and remand the case for resentencing.

## I.

In January or February 1992, the defendant began to make regular purchases of methamphetamine, or "crank," from his cousin, Jerry Goswick. The defendant purchased one gram or vial from Goswick each payday, twice monthly. In addition, the defendant knew that Goswick made weekly visits to Cleveland, Tennessee, to purchase six to ten grams of methamphetamine from Bobby Gene Orr.

On May 9, 1992, for the second time, the defendant accompanied Goswick on one of his weekly trips. Because Goswick had a back

problem and preferred not to drive alone, the defendant agreed to go on the May 9 drive, fully aware of Goswick's purpose in making the trip. The defendant did not know, however, that there was a fully loaded .22 caliber revolver, and additional .22 caliber rounds, secreted under Goswick's seat.

When the defendant and Goswick arrived at Orr's farm, the defendant helped move a piece of farm equipment up to Orr's pickup truck, then stood off to the side while Orr and Goswick exchanged drugs and cash. Goswick then hid approximately 26 grams of the contraband in his crotch, and gave one gram of crank to the defendant. The defendant gave Goswick no money for this gram, which was one of several *gratis* vials that Orr had given to Goswick.[1]

Meanwhile, acting on a tip, Bradley County Sheriff's detectives waited for Goswick's car, stopping the vehicle as Goswick and the defendant were en route to their homes in Chatsworth, Georgia. The officers found a vial of crank on Goswick and found one and one-half grams of the contraband on the defendant. When officials told the defendant and Goswick that they would be strip searched, Goswick turned over the hidden 26 grams.

Both the defendant and Goswick subsequently were indicted by a grand jury for conspiracy to possess an illegal substance with the intent to distribute it, in violation of 21 U.S.C. §§ 841(a)(1), 846; possession of the contraband with the requisite intent to distribute, in violation of 21 U.S.C. § 841(a)(1); and possession of a firearm in the course of a drug trafficking transaction, in violation of 18 U.S.C. § 924(c). Goswick pleaded guilty to the conspiracy and firearms charge, pursuant to a plea agreement, and was sentenced to 52 months imprisonment.

The defendant also agreed to plead guilty to the conspiracy charge. The parties agreed that an appropriate sentence for the defendant should be within the lower one-third of the applicable guideline range. In addition, the agreement contained the following provision regarding the defendant's role in the charged offense:

> Based upon the evidence presently available to the parties ..., the parties view this case as one where the defendant played a minimal role in the conspiracy. It is understood that this is simply the parties' view of the case at this time based on the available evidence, and it is not meant to bind the court in any way in the court's determination of the applicable guideline level.

In discussions at the time, the government agreed that a sentence of approximately eight months would be fair.

The defendant's Presentence Investigation Report calculated a base offense level of 18, plus a two-level upward adjustment, pursuant to section 2D1.1(b)(1), for the presence of a firearm during the transaction. There was a downward adjustment of three points for the defendant's acceptance of responsibility, for a total offense level of 17. The Probation Department did not recommend any downward adjustment in the offense level for the defendant's role in the charged offense.

The defendant objected to the report, challenging the firearms increase in the base offense level, the quantity of methamphetamine charged to him, and the failure to depart downward for his limited role in the conspiracy. The trial court determined that the defendant was entitled to a two-level downward departure based on his minor role in the offense, bringing his total offense level to 15, but held that the facts did not justify the four-level departure for minimal involvement. Based on the adjusted guideline range of 18 to 24 months imprisonment, the district court sentenced the defendant to 18 months imprisonment and three years supervised release. This appeal followed.

## II.

Pursuant to 18 U.S.C. § 3742(e), we have limited authority to review a sentence that is imposed in accordance with the law and that is within the applicable guideline

---

1. On the defendant's prior trip to Orr's farm, the defendant did not get out of the car, nor did he receive any free contraband.

range. *Id.* Moreover, "[t]he court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous...." *Id.* However, when the issue before the court is a legal question or a mixed question of fact and law, the court's review is *de novo.* *United States v. Chalkias,* 971 F.2d 1206, 1216 n. 12 (6th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 351, 121 L.Ed.2d 265 (1992).

### III.

■ The defendant argues that his involvement in the conspiracy is no more extensive than the example of minimal involvement provided in the sentencing guidelines commentary. These guidelines instruct the district court to reduce the offense level by four levels upon a finding that the defendant was only a "minimal participant" in the charged crime, or by two levels upon determining that the defendant was a "minor participant." U.S.S.G. § 3B1.2.

In distinguishing between minimal and minor participation, the sentencing guidelines commentary cautions the court that "the downward adjustment for a minimal participant will be used infrequently." U.S.S.G. § 3B1.2, comment. (n. 2). A downward adjustment is appropriate, for example, in the case of a one-time participant who plays a small role in "a very large drug smuggling operation," such as "offload[ing] part of a single marihuana shipment" or making a solitary delivery of a "small amount of drugs." *Id.* In such instances, "the defendant's lack of knowledge or understanding of the scope and structure of the enterprise" justifies the downward adjustment. *Id.* at (n. 1). A minor participant, on the other hand, is "any participant who is less culpable than most other participants, but whose role could not be described as minimal." *Id.* at (n. 3).

The district court's finding that the defendant here was not a minimal participant is not clearly erroneous. The defendant admitted to knowing "the scope and structure of the enterprise," in that he knew Goswick's dealer, knew Goswick made weekly trips to Cleveland to purchase "crank," and knew

approximately how much methamphetamine Goswick purchased each week. The defendant also knew that Goswick sold primarily to truck drivers.

In addition, the defendant's affiliation with the conspiracy was not isolated to a single incident. By his own admission, he accompanied Goswick on at least two drug-buying trips. He had been Goswick's regular customer, making methodical semimonthly purchases over a period of several months. The defendant also admitted to being his cousin's confidante in drug dealing matters. Given that it was the defendant's burden to prove such mitigating factors as minimal participation by a preponderance of the evidence, *see United States v. Nagi,* 947 F.2d 211, 215 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992), it cannot be said that the district court's finding was clear error.

■ Next, the defendant argues that he thought Goswick was a small-time drug dealer who purchased only six to ten vials of crank each week. The defendant maintains that he could not have foreseen that the trip he agreed to take would be for a buy of 26 grams, and therefore, he should not have been sentenced based on an undertaking of such scope.

In calculating the sentencing guideline range applicable to a defendant who has participated in "jointly undertaken criminal activity," the district court is to consider "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). In addition,

> [w]ith respect to offenses involving contraband (including controlled substances), the defendant is accountable for all quantities of contraband with which he was directly involved....

U.S.S.G. § 1B1.3, comment. (n. 2). If the defendant directly assisted in furthering the criminal activity, for example, by offloading a portion of a shipment or transporting some contraband, he is directly involved and responsible for all quantities in the shipment he helped offload, or in the container he transported. *Id.* at (n. 2)(a)(1).

Here, the defendant was directly involved in the purchase and transportation of all 26 grams of methamphetamine, and therefore, the district court properly calculated the drug quantity. As the sentencing guidelines commentary explains, the reasonably foreseeable standard has no application when the defendant is directly involved with the shipment, even if he was mistaken as to how much contraband he was transporting. *Id.* Accordingly, the district court did not commit clear error in attributing to the defendant the full amount of methamphetamine transported by Goswick and the defendant on the May 9 trip.

■ Finally, the defendant argues that the pistol in question was placed under the driver's seat by Goswick's wife, whose car they used to rendezvous with Goswick's supplier on May 9. On these facts, the defendant argues that it is clearly improbable that the weapon was connected to the conspiracy to traffic in drugs. In addition, the defendant maintains that he considered Goswick a "small time dealer" who was not known to carry a gun. Thus, the defendant argues that it could not have been foreseeable that Goswick would have a gun with him during the drug buy.

The federal sentencing guidelines mandate a two-level increase in a defendant's base offense level when "a dangerous weapon (including a firearm) was possessed" during a drug-related crime. U.S.S.G. § 2D1.1(b)(1). As the sentencing guidelines commentary explains:

> The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense.

U.S.S.G. § 2D1.1, comment. (n. 3).

■ As the guidelines indicate, the district court's inquiry into a weapons enhancement is two-fold. First, the court must determine whether the defendant possessed a firearm during the crime. Only if possession is established does the " 'burden shift[ ] to the defendant to show that it was clearly improb-

able that the weapon was connected with the offense. . . .' " *United States v. Duncan,* 918 F.2d 647, 651 (6th Cir.1990) (citation omitted), *cert. denied,* —— U.S. ——, 111 S.Ct. 2055, 114 L.Ed.2d 461 (1991).

In regard to the possession element, possession may be actual or constructive, meaning that there must be " 'ownership, dominion, or control' over the [firearm] 'or dominion over the premises' where the [firearm] is located." *United States v. Snyder,* 913 F.2d 300, 304 (6th Cir.1990) (citations omitted), *cert. denied,* 498 U.S. 1039, 111 S.Ct. 709, 112 L.Ed.2d 698 (1991). Moreover, this court has found that "possession of a gun by one coconspirator is attributable to another coconspirator if such possession constitutes reasonably foreseeable conduct." *Chalkias,* 971 F.2d at 1217. *See United States v. Williams,* 894 F.2d 208, 211–12 (6th Cir. 1990). The test as to whether conduct is reasonably foreseeable is an objective one. *Chalkias,* 971 F.2d at 1217.

Relying on the Fourth Circuit's decision in *United States v. White,* 875 F.2d 427 (4th Cir.1989), the government argued that we almost have reached the point where the presence of a firearm *always* will be foreseeable in drug transactions. In *White,* a defendant named Jackson was arrested while he and his codefendant, White, were transporting drugs with a firearm concealed under White's seat. *Id.* at 433. White had greeted Jackson at a train station late at night, but as the two men attempted to drive away, law enforcement officers stopped their progress. The arresting officers found 300 grams of cocaine in Jackson's pocket and a loaded .25 caliber pistol under White's seat. *Id.* at 429. Jackson admitted that he and White were friends, and had been involved in an earlier similar drug transaction. *Id.* at 433.

Relying on the "reasonably foreseeable" test of U.S.S.G. § 1B1.3, the court opined that the weapons enhancement was proper:

> The district court did not err in . . . enhancing Jackson's base offense level for the presence of the weapon. The weapon was present, Jackson and White were acting in concert, it was not improbable that the weapon was connected with the offense, and, under the circumstances of the

case, it was fair to say that it was reasonably foreseeable to Jackson that his co-participant was in possession of a firearm. *Id.* As the court further discussed, the pistol was readily accessible to either Jackson or White, and "it is not unreasonable to recognize that weapons have become 'tools of the trade' in illegal narcotics operations." *Id.* (citations omitted).

■ We are not willing to indulge the fiction that a firearm's presence always will be foreseeable to persons participating in illegal drug transactions. While, as *White* demonstrates, the fact that the pistol was secreted under the driver's seat does not preclude constructive possession by other occupants of the car, we long have maintained that "[m]ere presence on the scene plus association with illegal possessors is not enough" to establish constructive possession. *United States v. Birmley*, 529 F.2d 103, 107 (6th Cir.1976). "Guilt by association with the driver of the car, the act of being a passenger," will not alone sustain a conviction, *United States v. Pena*, 983 F.2d 71, 73 (6th Cir.1993), or, as in this case, a firearms enhancement. Rather, at a minimum, we require that there be objective evidence that the defendant knew the weapon was present, or at least knew it was reasonably probable that his coconspirator would be armed.

Here, the record is devoid of any such evidence. The firearm in question was found under Goswick's seat and, as such, was completely hidden from the defendant's view. The defendant testified at sentencing that he considered his cousin "small time" and it never occurred to him that Goswick would resort to violence to protect his drug operation. The defendant further testified that he believed he was accompanying Goswick solely for company, not because Goswick was looking for someone to act as a bodyguard or otherwise provide protection. The only evidence that possibly could support the enhancement was the defendant's admission that he knew Goswick sometimes carried up to $1,000 when buying drugs, and that he "guess[ed] the big-time dealers, they probably try to do bodily harm." Such ambivalent admissions, on their own, cannot sustain the enhancement.

## IV.

Because there was no evidence from which the district court reasonably could infer that the defendant knew that his coconspirator would be carrying a firearm, the weapons enhancement portion of the sentence imposed by the district court cannot stand. Therefore, we **VACATE** the sentence and **REMAND** the case for resentencing.