NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0813n.06

Nos. 12-1368, 12-1380

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) |
| | ) ON APPEAL FROM THE |
| MARCUS MILLER   (12-1368) | ) UNITED STATES DISTRICT |
| MARLON OLIVER   (12-1380), | ) COURT FOR THE WESTERN |
| | ) DISTRICT OF MICHIGAN |
| Defendants-Appellants. | ) |
| | ) |

BEFORE:  SILER, MOORE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.  Marlon Oliver was convicted by a jury of being part of a large cocaine-distributing conspiracy in Lansing, Michigan, and Marcus Miller pled guilty to the same crime.  Oliver challenges his conviction, arguing that he was a small-time dealer who worked on his own and was not involved in the conspiracy.  He also argues that his sentence, at the bottom of the guidelines range for a career offender, is substantively unreasonable.  Miller challenges only his sentence, arguing that the court improperly applied an enhancement for possession of a weapon. Miller claims that although his co-conspirators were found with a weapon at the drug-packaging site, he knew nothing about it.  None of their challenges has merit.

Marlon Oliver and Marcus Miller were charged with conspiring to distribute, and to possess with the intent to distribute, at least five hundred grams of a cocaine mixture and at least twenty-

eight grams of a cocaine base mixture. Oliver went to trial, claiming that, although he frequently bought and sold cocaine, he was not part of the conspiracy. Miller pled guilty.

During Oliver's trial, the government introduced testimony from law enforcement officers, informants, and alleged co-conspirators. A law enforcement witness testified that Oliver admitted in an interview that he purchased cocaine from Otis Morris three to five times. Oliver also admitted purchasing cocaine from Tyree Miller. Oliver admitted that Morris and Tyree Miller were part of a cocaine-trafficking conspiracy. Tyree Miller testified that Ramiro Palacio was also part of the conspiracy and helped arrange Oliver's purchase.

Oliver also worked with several people who were not charged as part of the large conspiracy. He had an agreement with Robbin Johnson, who sold some of Oliver's cocaine for him and allowed Oliver to sell drugs out of his house. Johnson also assisted Oliver in confronting Palacio when Oliver accused Palacio of stealing. According to the government's account, Palacio had stolen drugs from Oliver. In response to the theft, Oliver threatened Palacio with a gun while Johnson assaulted him. The government also put on witnesses, including informants who conducted controlled buys, who testified that Oliver was involved in hundreds of cocaine transactions.

The jury determined that Oliver was part of a conspiracy and found him guilty. His presentence report included a long list of previous arrests and convictions, including two previous convictions for delivering controlled substances. Based on his criminal history points, he would have been in criminal history category IV. However, because he had two prior controlled-substance-

offense convictions, he was classified as a career offender under U.S. Sentencing Guidelines Manual § 4B1.1. That classification increased his criminal history category to VI.

Oliver did not argue that the career-offender rule did not apply to him. Instead, he argued that if the rule was applied, his sentence recommendation would not accurately reflect his minor role in the conspiracy. Accordingly, he asked the district court for a downward variance from the sentence suggested by the guidelines. The court did not grant the variance, noting Oliver's extensive criminal record, his use of a firearm in connection with the offense, and his use of his drug proceeds to buy luxury items instead of paying child support. The court noted that previous prison sentences failed to send Oliver the proper message and that he needed to be specifically deterred from committing future offenses. The court sentenced Oliver to 360 months' imprisonment, at the bottom of the guideline-recommended range. Oliver appeals, arguing that there was insufficient evidence that he was part of the conspiracy. He also challenges his sentence, claiming that it is substantively unreasonable.

Unlike Oliver, Miller pled guilty. At his sentencing, he challenged an enhancement for possession of a firearm in furtherance of the conspiracy pursuant to U.S. Sentencing Guidelines Manual § 2D1.1(b)(1). He argued that he did not possess or use a firearm at any point and that he was not aware that any of his co-conspirators possessed a firearm. After hearing from a witness, the court rejected this argument, finding that the weapon was present in a house that was used by the conspiracy to package drugs and that, therefore, Miller should have reasonably foreseen that his co-

conspirators possessed the firearm. Miller appeals, challenging the application of the firearms enhancement.

Oliver did not make a Rule 29 motion for acquittal at trial. His sufficiency-of-the-evidence challenge is therefore reviewed only for a manifest miscarriage of justice and can be reversed "only if the record is devoid of evidence pointing to guilt." *United States v. Price*, 134 F.3d 340, 350 (6th Cir. 1998) (internal quotation marks omitted). Oliver cannot meet this high standard because there is evidence that he was part of the cocaine-trafficking conspiracy.

Oliver admits having been a cocaine dealer. The only question is whether he was part of the conspiracy, as the jury found, or whether he was a "lone wolf" as he claims. There is evidence of the former. Oliver purchased cocaine for resale from conspiracy members Otis Morris and Tyree Miller. He used other conspiracy members to facilitate purchases. There was also evidence that Oliver was involved in hundreds of drug sales. Since he did not manufacture his own cocaine, he must have made large and frequent purchases from distributors such as Morris and Tyree Miller. This is further evidence that Oliver was part of the conspiracy. "Since the jury was presented with significant evidence that defendant was heavily involved in drug trafficking, it could infer that the source of his drugs remained fairly constant." *United States v. Anderson*, 89 F.3d 1306, 1311-12 (6th Cir. 1996).

Oliver argues that evidence that he sold drugs is not enough to prove that he was part of a conspiracy. However, such evidence may be enough to demonstrate that there was not a manifest miscarriage of justice in this case. Furthermore, while one-off purchases do not demonstrate the

existence of a conspiracy, repeated purchases do. *Id.* Oliver purchased drugs from several members of the conspiracy on multiple occasions, and used other members to set up his purchases. This evidence supports a conclusion that he knew that the conspiracy existed and that he was distributing drugs in furtherance of the conspiracy.

Oliver's sentence is reasonable considering the large amount of cocaine the conspiracy distributed and his lengthy criminal history. Because his sentence is within the properly calculated sentencing guideline range, it is presumed reasonable. *See United States v. Rosenbaum*, 585 F.3d 259, 267 (6th Cir. 2009). This reasonableness is confirmed by the factors the district court properly used to decide on the sentence.

Oliver's adult criminal history began at age seventeen with a breaking-and-entering conviction. His history also includes trespassing, multiple instances of cocaine possession, and fleeing and eluding police. More recently, Oliver began a career in cocaine distribution. This is demonstrated by his two previous convictions for delivery of cocaine and his involvement in the charged conspiracy. Oliver would sell an ounce or two of cocaine per month, making $600 to $2,000 per ounce. Oliver's return to cocaine dealing after completing two prison sentences makes reasonable the minimum recommended sentence under the career-offender status.

Oliver argues that his sentence is substantively unreasonable because it is significantly longer than his previous sentences for cocaine-dealing crimes. The career offender guidelines exist precisely for people like Oliver, who leave prison after short sentences and, rather than being deterred from further criminal activity, return immediately to the drug trade. Having determined that

shorter sentences failed to deter Oliver, it was reasonable, and in line with the career offender guidelines, for the district court to determine that a longer term was appropriate.

Furthermore, the particular offense in this case is more egregious than his previous offenses. The conspiracy Oliver was a part of, if only as a street-level dealer, planned to distribute at least 500 grams of cocaine and at least twenty-eight grams of cocaine base. Oliver personally participated in hundreds of cocaine transactions. This conduct also supports the reasonableness of the 360-month sentence.

Additionally, we deny Oliver's motion to submit a pro se supplemental brief. This court "generally will not consider a defendant's pro se claims when he is represented by counsel." *United States v. Modena*, 430 F. App'x 444, 448 (6th Cir. 2011).

Miller challenges only the firearm enhancement to his sentence. The district court used the fortress theory to determine that Miller possessed a firearm during the offense, but we do not rely on that theory in affirming. "Appellate courts may affirm on alternative grounds supported by the record." *Murphy v. National City Bank*, 560 F.3d 530, 535 (6th Cir. 2009). Because Miller was involved in a large-scale drug-trafficking conspiracy, he could have reasonably foreseen that his co-conspirators possessed the weapon in connection with that conspiracy. This is an alternative ground that supports application of the enhancement. *See United States v. Woods*, 604 F.3d 286, 290 (6th Cir. 2010).

In determining whether a defendant convicted of taking part in a drug-related conspiracy could have reasonably foreseen that his co-conspirators were armed, this court has generally looked

at the quantity of drugs involved in the conspiracy as a whole. In the cases where this court found that the possession was not reasonably foreseeable, the quantity of drugs possessed or distributed was small and there was no other evidence of possession. For example, in *United States v. Woods*, the firearm enhancement did not apply because the conspiracy involved only approximately fifty-four grams of methamphetamine. *Id.* at 291. Similarly, in *United States v. Cochran*, 14 F.3d 1128, 1133 (6th Cir. 1994), this court held that firearm possession was not reasonably foreseeable where the defendant believed that his cousin, who actually possessed the gun, was "small time" and there were only twenty-six grams of methamphetamine involved. On the other hand, this court has affirmed the application of the enhancement in cases involving major drug trafficking. For example, in *United States v. Benson*, 591 F.3d 491, 505 (6th Cir. 2010), the co-conspirator was a "major drug trafficker" and it was thus foreseeable that he would keep a weapon in the place where he "kept a significant drug supply and thousands of dollars in currency." Likewise, in *United States v. Odom*, 13 F.3d 949, 959 (6th Cir. 1994), this court noted that "[t]he nexus between drugs and firearms has been acknowledged when large quantities of cocaine are involved in a conspiracy."

Miller was held responsible for 271.98 grams of cocaine base. All told, the remaining conspiracy members were cumulatively held responsible for over 2.69 kilograms of cocaine base and

2.26 kilograms of marijuana.[1]  This was a major drug operation, and it was reasonably foreseeable that there would be guns present to protect the operation.

Because there is evidence in the record indicating that Oliver was part of the major drug conspiracy and because his sentence is substantively reasonable, his conviction and sentence are affirmed.  Because the firearm enhancement applies to Miller, his sentence is affirmed.

---

[1]Oliver was held responsible for 1.13 kilograms of cocaine base, Tyree Miller for 878.85 grams of cocaine base, Ricardo Mathews for 45.2 grams of cocaine base, Ramiro Palacio for 56.76 grams of cocaine base, Darryle Burton for 485.02 grams of cocaine base, and Chris Johnson for 101.25 grams of cocaine base and 2.268 kilograms of marijuana.  Although some of the cocaine is likely double-counted, the number of conspirators and quantities of drugs indicate that this was a massive drug-trafficking scheme.