**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Cornell CLISBY, Defendant–Appellant.**

No. 14–3764.

United States Court of Appeals, Sixth Circuit.

Jan. 8, 2016.

Before: MOORE and COOK, Circuit

Judges; PEARSON, District Judge.*

## OPINION

KAREN NELSON MOORE, Circuit Judge.

Cornell Clisby ("Clisby") led a year-long heroin conspiracy. His co-conspirators included his ex-wife, Dorothy Clisby. When law-enforcement agents executed a search warrant at Dorothy's home, where Clisby stashed heroin in the basement, they found a 9mm Smith & Wesson handgun in her nightstand drawer. The government argued that Clisby's sentence should be enhanced by two levels under U.S.S.G. § 2D1.1(b)(1) because he possessed a firearm—the Smith & Wesson—during the conspiracy. The district court agreed and sentenced Clisby to 408 months in prison. Clisby appeals, arguing that the district court erred when it applied the firearm enhancement. For the reasons set forth below, we **AFFIRM** Clisby's sentence.

## I. BACKGROUND

### A. Facts

Between October 2011 and October 2012, Clisby and six co-defendants conspired to distribute heroin and other drugs in and around Cincinnati, Ohio. R. 196 (Change of Plea Hr'g Tr. at 17–19) (Page ID # 823–25). Clisby led the conspiracy: he procured the drugs, supplied them to his co-conspirators, and stashed them in houses around Cincinnati. *Id.*

Among Clisby's co-conspirators was his ex-wife, Dorothy. *Id.* at 18 (Page ID

# 824); R. 203 (Dorothy Clisby Sentencing Tr. at 26) (Page ID # 939).[1] The two married in 1992, had one child, and divorced in 2000. Clisby Presentence Report ("PSR") ¶ 153. Clisby and Dorothy maintained a relationship after their divorce. Clisby would sometimes spend the night at Dorothy's apartment on Kingsway Court in Cincinnati, and he gave her money for rent and living expenses.[2] R. 197 (Cornell Clisby Sentencing Tr. at 4) (Page ID # 833); R. 203 (Dorothy Clisby Sentencing Tr. at 27–28) (Page ID # 940–41).

Clisby also stored drugs at Dorothy's home. R. 203 (Dorothy Clisby Sentencing Tr. at 27) (Page ID # 940). He kept them in Dorothy's basement storage unit. *Id.* at 27–28 (Page ID # 940–41). And on "one or two occasions," Dorothy retrieved and delivered those drugs to other people at Clisby's request. *Id.* at 31 (Page ID # 944).

On October 10, 2012, law-enforcement agents executed search warrants at several locations, including the Kingsway Court residence. PSR ¶¶ 47–48. There, in a nightstand in Dorothy's bedroom, they found an unloaded 9mm Smith & Wesson handgun and a magazine loaded with eleven rounds. *Id.* ¶ 51.

### B. Procedural History

In October 2012, a grand jury indicted Clisby, Dorothy, and five others for conspiring to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(i), and 846. R. 13 (Indictment at 1–2) (Page ID # 175–76). Clisby pleaded guilty to the one count against him pursuant to a writ-

---

* The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

1. On May 22, 2015, Clisby moved to expand the record in his case to include the transcript of Dorothy's sentencing. R. 200 (Mot. to Expand R. for Purposes of Appeal) (Page ID # 907). The district court granted Clisby's

motion on June 2, 2015. R. 201 (6/2/15 Order) (Page ID # 910).

2. Dorothy's apartment was on the second floor of "a four-unit apartment building." R. 203 (Dorothy Clisby Sentencing Tr. at 27) (Page ID # 940).

ten agreement. R. 92 (Plea Agreement) (Page ID # 389); R. 196 (Change of Plea Hr'g Tr. at 3) (Page ID # 809).

Clisby's Presentence Report added a number of sentencing enhancements to his Base Offense Level of 32. PSR ¶ 77. Those enhancements included four levels for leading the conspiracy (under U.S.S.G. § 3B1.1(a)); two levels for maintaining "stash houses" (including the Kingsway Court residence) to store drugs (U.S.S.G. § 2D1.1(b)(12)); and two levels for possessing a firearm-the 9 mm handgun that law-enforcement recovered from Dorothy's bedroom (U.S.S.G. § 2D1.1(b)(1)). *Id.* ¶¶ 78–82, 86–87.

Clisby raised several objections to his Presentence Report, including the firearm enhancement. R. 119 (Def.'s Obj. to Presentence Investigation Report at 1–2) (Page ID # 462–63). He claimed that there was "no evidence [he] utilized the weapon at issue to protect drugs that were allegedly stored and processed" at Kingsway Court. *Id.* at 2 (Page ID # 463). Clisby renewed this objection in his sentencing memorandum. R. 144 (Def.'s Sentencing Mem. and Mot. For Downward Departure at 5) (Page ID # 570).

Clisby and Dorothy were both sentenced on July 28, 2014: Dorothy at 9:55 a.m., and Clisby at 12:10 p.m. R. 197 (Cornell Clisby Sentencing Tr.) (Page ID # 830); R. 203 (Dorothy Clisby Sentencing Tr.) (Page ID # 914). Because she also received a two-level firearm enhancement in her Presentence Report, Dorothy testified about the handgun in her nightstand. R. 203 (Dorothy Clisby Sentencing Tr. at 4, 22) (Page ID # 917, 935). She explained that the firearm was Clisby's: Dorothy kept it for him after the two "cleaned out his apartment" when he was prosecuted for selling cocaine roughly twenty years before the instant offense. *Id.* at 23 (Page ID # 936); PSR ¶ 120. For years, Dorothy stashed the firearm in her sister's attic. R. 203 (Dorothy Clisby Sentencing Tr. at 22–23) (Page ID # 935–36). But around 2011 or 2012—when Dorothy was living in Lincoln Heights, Cincinnati, and Clisby was incarcerated—two teenagers robbed Dorothy's residence. *Id.* at 19–20 (Page ID # 932–33). Dorothy, fearing for her safety, retrieved the firearm from her sister. *Id.* at 21–22 (Page ID # 934–35). Dorothy bought ammunition for the handgun but never fired it or inserted a magazine into it. *Id.* at 23–24 (Page ID # 936–37). Instead, she kept it in a nightstand in her Lincoln Heights home. *Id.* at 24 (Page ID # 937).

Sometime thereafter, Dorothy moved to her new home on Kingsway Court, bringing the nightstand (and handgun) along with her. *Id.* at 24–25 (Page ID # 938–39). At her sentencing, Dorothy testified that she didn't know whether Clisby had ever handled the firearm; she wasn't even sure if he knew it was in her nightstand. *Id.* at 27 (Page ID # 940). She did testify, however, that she was sure that Clisby had "been in [her] nightstands" before. *Id.* The district court ultimately concluded that Dorothy did possess the firearm under § 2D1.1(b)(1), and agreed with the government that she deserved a two-level enhancement. *Id.* at 44 (Page ID # 957). The district court added another two-level enhancement because it determined that Dorothy's Kingsway Court residence was a "stash house." *Id.* at 40 (Page ID # 953).

The district court reached the same conclusions at Clisby's sentencing. Clisby's counsel, pointing to Dorothy's testimony just hours earlier, argued that "Miss Clisby ha[d] claimed responsibility and ownership of the firearm" and that it "[was] not established that Mr. Clisby possessed this firearm." R. 197 (Cornell Clisby Sentencing Tr. at 5, 11) (Page ID # 834, 840). The district court disagreed, albeit without

clearly articulating whether it believed that Clisby "actually" or "constructively" possessed the handgun. The firearm, the court noted, was in fact Clisby's. *Id.* at 11 (Page ID # 840). It added that Clisby "would have been aware" that the handgun was in Dorothy's nightstand, and moreover "that it was not improbable that the weapon was used for a stash house." *Id.* The district court enhanced Clisby's sentence by two levels for firearm possession and two levels for maintaining a stash house, and ultimately imposed a within-Guidelines sentence of 408 months of imprisonment. *Id.* at 11–12, 56 (Page ID # 840–41, 885). Clisby timely appealed. R. 162 (Notice of Appeal) (Page ID # 638).

## II. ANALYSIS

Clisby raises just one claim on appeal: that the district court erred by imposing the two-level firearm enhancement under U.S.S.G. § 2D1.1(b)(1). He claims that the firearm was Dorothy's. And he argues that even if he possessed the firearm, "it was clearly improbable that the firearm was connected to [his] offense of conviction." Appellant Br. at 10.

"A district court's finding that a defendant possessed a firearm during a drug crime is a factual finding" that we review for clear error. *United States v. Benson,* 591 F.3d 491, 504 (6th Cir.2010) (quoting *United States v. Darwich,* 337 F.3d 645, 664 (6th Cir.2003)). "A finding of fact is clearly erroneous 'when, although there may be some evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Wheaton,* 517 F.3d 350, 367 (6th Cir.2008) (quoting *Darwich,* 337 F.3d at 664).

U.S.S.G. § 2D1.1(b)(1) provides that a defendant's Base Offense Level should be increased by two levels "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1) (U.S. Sentencing Comm'n 2013).[3] Application Note 11 adds: "The enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons. The enhancement *should be applied* if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.* cmt. n.11(A) (emphasis added).

We have read § 2D1.1(b)(1) and Application Note 11 to entail a two-step burden-shifting scheme. Our cases delineating the first step, however, have been somewhat mixed. We have often stated that in order to demonstrate that a defendant merits § 2D1.1(b)(1)'s enhancement, "[t]he government must prove by a preponderance of the evidence 'that (1) the defendant actually or constructively possessed the weapon, and (2) such possession was during the commission of the offense.'" *United States v. Johnson,* 344 F.3d 562, 565 (6th Cir.2003) (internal quotation marks omitted) (quoting *United States v. Pruitt,* 156 F.3d 638, 649 (6th Cir.1998)); *accord United States v. Catalan,* 499 F.3d 604, 606 (6th Cir.2007); *United States v. Hill,* 79 F.3d 1477, 1485 (6th Cir.1996). However, the 1991 Sentencing Guidelines Manual dispensed with the requirement that the government prove possession "during the commission of the offense." *United States v. Faison,* 339 F.3d 518, 520 (6th Cir.2003); *compare* U.S.S.G. § 2D1.1(b)(1) (U.S. Sentencing Comm'n 2013) ("If a dangerous weapon (including a firearm) was possessed, increase by 2 levels.") *with* U.S.S.G. § 2D1.1(b)(1) (U.S. Sentencing

---

**3.** Because Clisby was sentenced on July 28, 2014, we refer to the 2013 Sentencing Guide-

lines—which were in effect at his sentencing—unless otherwise noted.

Comm'n 1990) ("If a dangerous weapon (including a firearm) was possessed during commission of the offense, increase by 2 levels.").

Accordingly, in order to satisfy § 2D1.1(b)'s first step, "[a]ll that the government need show is that the dangerous weapon [was] possessed during *'relevant conduct.' " United States v. Greeno*, 679 F.3d 510, 514 (6th Cir.2012) (emphasis added) (quoting *Faison*, 339 F.3d at 520); *accord United States v. Ward*, 506 F.3d 468, 475 (6th Cir.2007). To determine what constitutes "relevant conduct" under § 2D1.1, we look to § 1B1.3 ("Relevant Conduct (Factors that Determine the Guideline Range)"). Section 1B1.3 provides that "specific offense characteristics"—such as whether a firearm "was possessed" within the meaning of § 2D1.1(b)(1)—"shall be determined on the basis of":

> [A]ll acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and ... in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense....

U.S.S.G. § 1B1.3(a); *see Ward*, 506 F.3d at 475 (consulting § 1B1.3 to determine what conduct is "relevant" for purposes of § 2D1.1(b)(1) enhancement); *Faison*, 339 F.3d at 520 (same).

The second step is clearer. If the government proves that a defendant pos-

sessed a firearm "during 'relevant conduct,' " *Greeno*, 679 F.3d at 514, then "the burden shifts to the defendant to establish that it is clearly improbable that the weapon was connected to the offense." *Johnson*, 344 F.3d at 565 (internal quotation marks and citation omitted). In other words, "[t]he government is *not* required to show that the firearm possession, once shown, is related to the drug crime." *Id.* at 567. Rather, if the government proves by a preponderance that the defendant possessed a firearm, "a presumption arises that 'the weapon was connected to the offense.' " *Wheaton*, 517 F.3d at 367 (quoting *United States v. Hough*, 276 F.3d 884, 894 (6th Cir.2002)); *United States v. Maynard*, 94 Fed.Appx. 287, 292 (6th Cir.2004). A defendant can rebut that presumption by "present[ing] evidence, not mere argument" proving that it is "clearly improbable" that the firearm is connected to the offense. *Greeno*, 679 F.3d at 514. "[T]he 'clearly improbable' standard is a difficult burden to meet in the first instance at sentencing"; moreover, on appeal, we review the district court's application of § 2D1.1(b)(1) for clear error. *Johnson*, 344 F.3d at 567.

Applying these principles, we hold that the district court did not clearly err when it enhanced Clisby's offense level by two levels under § 2D1.1(b)(1). The government proved by a preponderance that Clisby possessed the 9mm Smith & Wesson handgun, thereby establishing the presumption that the firearm was connected to the offense. Clisby failed to show that it was clearly improbable that that firearm was connected to the heroin conspiracy. We address each issue in turn.

We begin with the first step: whether the government proved by a preponderance of the evidence that Clisby possessed the firearm during "relevant conduct." In his brief, Clisby argues "that Dorothy's

testimony [at her sentencing] establishes that it was she, not Clisby, who possessed the gun." Appellant Br. at 25. By his logic, Dorothy (and *only* Dorothy) deserves § 2D1.1(b)(1)'s enhancement because she kept the firearm for many years. That argument is unavailing, because a co-conspirator's possession of a firearm can, in some circumstances, be imputed to another co-conspirator. *See, e.g., United States v. Williams,* 176 F.3d 301, 307 (6th Cir.1999). Here too, our cases explaining *when* and *in what circumstances* this can occur have taken different approaches.

Some of our cases have focused on whether a co-conspirator's possession—and possession alone—was "reasonably foreseeable" to another co-conspirator. *See, e.g., Johnson,* 344 F.3d at 565 (quoting *United States v. Owusu,* 199 F.3d 329, 347 (6th Cir.2000)) ("If the offense committed is part of a conspiracy, it is sufficient if the government establishes 'that a member of the conspiracy possessed the firearm and that the member's possession was reasonably foreseeable by other members in the conspiracy.'"); *Williams,* 176 F.3d at 307 ("[I]f it is reasonably foreseeable to a defendant that his co-conspirator possesses a gun, constructive possession is attributable to him as well."); *United States v. Chalkias,* 971 F.2d 1206, 1217 (6th Cir.1992) ("The possession of a gun by one co-conspirator is attributable to another co-conspirator if such possession constitutes reasonably foreseeable conduct."). That formulation understates the definition of "relevant conduct" in § 1B1.3. Section 1B1.3 defines relevant conduct "in the case of a jointly undertaken criminal activity" as "all reasonably foreseeable acts and omissions of others *in furtherance of the jointly undertaken criminal activity.*" U.S.S.G. § 1B1.3(a)(1) (emphasis added). Thus, it is not enough for the government to prove that a co-conspirator's *possession* of a firearm was reasonably foreseeable to another co-conspirator. Rather, we think the interpretation more faithful to § 1B1.3–as it applies to § 2D1.1(b)(1)—is that the government must prove by a preponderance that a co-conspirator's *possession in furtherance of the conspiracy* was reasonably foreseeable. *See, e.g., Benson,* 591 F.3d at 504 ("The § 2D1.1(b)(1) firearms enhancement can be applied to a defendant's sentence if the defendant could have reasonably foreseen that a co-conspirator had weapons in connection to the drug conspiracy."); *United States v. Woods,* 604 F.3d 286, 290 (6th Cir.2010) ("Under such circumstances, the possession of a firearm by a co-conspirator must (1) be connected to the conspiracy and (2) be reasonably foreseeable."). In other words, there must be some nexus between the firearm and the conspiracy in order for one co-conspirator's possession to be imputed to another.

This approach is fully consistent with Application Note 11's command that § 2D1.1(b)(1)'s "enhancement should be applied if the weapon was *present.*" U.S.S.G. § 2D1.1(b)(1) cmt. n.11(A) (emphasis added). That Note, we have observed, "deals only with the question of whether a firearm is connected to the offense," *Woods,* 604 F.3d at 290—which is a question we consider under the *second step* of § 2D1.1(b)(1)'s test. "It has no bearing on the additional requirement that the presence of such a firearm must also be reasonably foreseeable to the defendant," *id.*—which is a requirement of the *first step* when analyzing possession via a co-conspirator.

Accordingly, whether Dorothy's possession of the firearm can be attributed to Clisby, her co-conspirator, turns on the following question: Was it reasonably foreseeable to Clisby that Dorothy would possess a firearm in connection with their heroin conspiracy? For the purposes of

this appeal, we must answer a narrower question: Considering "the entire evidence," are we "left with the definite and firm conviction that" the district court clearly erred by concluding that Clisby possessed the firearm within the meaning of § 2D1.1(b)(1)? *Wheaton*, 517 F.3d at 367 (quoting *Darwich*, 337 F.3d at 664); *see Woods*, 604 F.3d at 290 (citation omitted) ("Whether a co-conspirator's actions were reasonably foreseeable is a factual finding reviewed for clear error.").

We conclude that the district court did not clearly err. To begin, Clisby knew that Dorothy possessed a firearm. Dorothy's testimony at her sentencing confirms that Clisby often spent the night at her residence, and that he had been through her nightstand where she kept the firearm. Moreover, Clisby *gave* that firearm to Dorothy (albeit many years ago). Based on these facts, Clisby could reasonably foresee that Dorothy possessed a handgun.

That, however, does not end our inquiry. We must consider whether it was reasonably foreseeable to Clisby that Dorothy would possess a handgun *in connection with their heroin conspiracy*. This is a closer question, but evidence in the record links the firearm to the conspiracy. Again, we look to § 1B1.3 to determine what conduct is relevant for the purpose of applying § 2D1.1(b)(1). With respect to "jointly undertaken criminal activity," § 1B1.3 deems the following "relevant": "[A]ll reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense...." U.S.S.G. § 1B1.3(a)(1)(B).

Dorothy's residence at Kingsway Court was not just her home; it was a stash house within the meaning of U.S.S.G.

§ 2D1.1(b)(12). PSR ¶¶ 80–82; R. 197 (Cornell Clisby Sentencing Tr. at 11–12) (Page ID # 840–41); R. 203 (Dorothy Clisby Sentencing Tr. at 40) (Page ID # 953). Importantly, Clisby does not challenge the district court's application of § 2D1.1(b)(12) on appeal.

That leaves us with three significant facts. First, Clisby spent time at Dorothy's Kingsway Court residence and went through her nightstand, where she kept the firearm that Clisby had given her. Second, Clisby stored drugs in the basement of Kingsway Court. Finally, Dorothy—who kept the firearm in her residence for the duration of the charged conspiracy—*knew* that Clisby kept drugs in the basement because on "one or two occasions" Clisby directed Dorothy to deliver those drugs to other people. R. 203 (Dorothy Clisby Sentencing Tr. at 31) (Page ID # 944). Clisby, then, could not only reasonably foresee that Dorothy possessed a firearm; he could reasonably foresee that she possessed a firearm *in a stash house*. In other words, a preponderance of the evidence demonstrates that it was reasonably foreseeable to Clisby that Dorothy would possess a handgun "in furtherance of" their conspiracy. U.S.S.G. § 1B1.3(a)(1)(B). The district court did not clearly err when it reached the same conclusion.

Moving to the second step of § 2D1.1(b)(1)'s test, we conclude that Clisby failed to show that it was clearly improbable that the firearm was connected to his heroin conspiracy. Because the government demonstrated that Clisby possessed a firearm within the meaning of § 2D1.1(b)(1), "a presumption ar[ose] that 'the weapon was connected to the offense.'" *Wheaton*, 517 F.3d at 367 (quoting *Hough*, 276 F.3d at 894). Clisby could rebut that presumption by "present[ing] evidence, not mere argument" proving that

it was "clearly improbable" that the firearm was connected to his offense. *Greeno*, 679 F.3d at 514. He failed to do so.

"In determining whether a defendant has rebutted this heavy presumption," *Maynard*, 94 Fed.Appx. at 292, we consider several factors:

(1) the type of firearm involved; (2) the accessibility of the weapon to the defendant; (3) the presence of ammunition; (4) the proximity of the weapon to illicit drugs, proceeds, or paraphernalia; (5) the defendant's evidence concerning the use of the weapon; and (6) whether the defendant was actually engaged in drug-trafficking, rather than mere manufacturing or possession.

*Greeno*, 679 F.3d at 515 (citations omitted). These factors all cut against Clisby. First, the firearm in question was a 9mm handgun—a type of weapon that Clisby himself admits "is commonly used in connection with drug offenses." Appellant Br. at 25. Second, Clisby had ready access to the weapon: he routinely visited the Kingsway Court residence, both to store drugs in the basement and to spend the night in Dorothy's home. R. 197 (Cornell Clisby Sentencing Tr. at 4) (Page ID # 833); R. 203 (Dorothy Clisby Sentencing Tr. at 27–28) (Page ID # 940–41). Third, although Dorothy avers that she kept the handgun unloaded, law-enforcement officers found a loaded magazine in the nightstand drawer alongside the firearm. Fourth, Dorothy kept the handgun in the same building where Clisby stored drugs that were distributed during the conspiracy. Fifth, although Clisby has repeatedly argued that he does not merit § 2D1.1(b)(1)'s enhancement because *Dorothy* possessed the firearm, that argument fails because she was Clisby's co-conspirator: as discussed *supra*, her possession of the gun is imputed to Clisby. Finally, Clisby was a drug trafficker, not just a drug possessor; indeed, he led the conspiracy at issue in this case. Based on these facts, Clisby failed to show that it was clearly improbable that the firearm in Dorothy's nightstand was connected to the heroin conspiracy he led. In turn, we cannot say that the district court clearly erred by enhancing Clisby's sentence under § 2D1.1(b)(1).

### III. CONCLUSION

For the reasons set forth above, we **AFFIRM** Clisby's sentence.