**NOT RECOMMENDED FOR PUBLICATION**
File Name: 19a0127n.06

**Nos. 18-5108/5109**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Mar 18, 2019 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| CHRISTOPHER D. WASHINGTON (18-5108); STEVEN D. HARVEY (18-5109), | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

Before: SUTTON, WHITE, and DONALD, Circuit Judges.

HELENE N. WHITE, Circuit Judge.

Defendants-Appellants Christopher D. Washington (Washington) and Steven D. Harvey (Harvey) challenge the sentences imposed by the district court after they pled guilty to possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1) (Washington) and possessing with intent to distribute heroin in violation of 21 U.S.C. § 841(a) (Harvey). Washington challenges the district court's application of the four-level firearm enhancement provided in U.S. Sentencing Guidelines Manual (U.S.S.G. or Guidelines) § 2K2.1(b)(6)(B). Harvey challenges the district court's application of the two-level enhancement for possessing a firearm during his drug crime under U.S.S.G. § 2D1.1(b)(1). Harvey also argues that his sentence is procedurally unreasonable because the district court failed to provide a reasoned basis for the sentence, and is substantively

unreasonable because it was greater than necessary to accomplish the purposes of sentencing. Finding no error, we affirm the district court in all respects.

## I. Background

### A. Arrests and Guilty Pleas

In October 2016, the Drug Enforcement Administration (DEA) began investigating Harvey's suspected involvement in drug trafficking. As part of the investigation, law enforcement surveilled Harvey at various times over the ensuing months. On June 20, 2017, law enforcement executed search warrants at two storage units used by Harvey, and recovered 793 grams of heroin, 86.68 grams of cocaine, drug paraphernalia, and $26,780 in currency. That same day, while surveilling Harvey, officers observed Harvey driving a GMC Yukon with Washington as a passenger; the men made various stops before ultimately arriving at Harvey's residence. Later in the day, when Washington and Harvey left Harvey's residence and walked toward the Yukon, officers arrested Harvey. While arresting Harvey, officers detained Washington and found a stolen pistol, digital scales, and $833 in currency in his pockets. Officers determined that Washington had been previously convicted of a felony and arrested him.

Law enforcement thereafter found $5,251 in currency in Harvey's house, nearly 50 grams of marijuana in the Yukon, and a pistol in a white Chevrolet Caprice parked in front of Harvey's house. Law enforcement also searched Washington's phone and found text messages indicating that he had been selling small amounts of various drugs.

Washington and Harvey were indicted together. Washington eventually pled guilty to a count of possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1), and Harvey pled guilty to a count of possessing with intent to distribute heroin, in violation of 21 U.S.C. § 841(a).

**B. Washington's Sentencing**

Washington's presentence report (PSR) recommended applying a four-level increase under U.S.S.G. § 2K2.1(b)(6)(B) for using or possessing a firearm in connection with drug trafficking. Washington objected to the four-level enhancement on the basis that there was insufficient evidence that he possessed the pistol in connection with drug trafficking. The district court overruled the objection, finding that there was sufficient evidence that Washington possessed the pistol in connection with trafficking marijuana. The district court relied on the following to make that determination: (1) text messages on Washington's phone showed that he was "selling small amounts of various drugs" "several months earlier [than his arrest in June] . . . May perhaps, April or May" (R. 102, PID 526, 534); (2) officers found marijuana in the Yukon that Washington and Harvey rode in for "a good portion of the day" (*id.* at PID 535); and (3) officers found scales and the pistol in Washington's pocket.

After overruling Washington's sole objection, the district court calculated Washington's Guidelines range as 30 to 37 months of imprisonment, and sentenced Washington to 33 months of imprisonment.

**C. Harvey's Sentencing**

Harvey's PSR recommended a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a firearm while drug trafficking. Harvey objected to that enhancement, arguing that (1) although he owned a white Caprice, he did not own the white Caprice in which officers found the pistol and (2) he did not constructively possess Washington's pistol.

At sentencing, the district court overruled Harvey's objection, finding sufficient evidence that Harvey both possessed the pistol that was found in the white Caprice and constructively possessed Washington's pistol. The district court rejected Harvey's argument because Harvey

admitted to owning a white Caprice and the white Caprice in which the pistol was found was the only white Caprice in the area. The district court also found that Harvey and Washington were engaged in drug trafficking on June 20, 2017 because Washington and Harvey were together most of the day, they made numerous stops, and Washington had digital scales in his pocket. Finally, the district court found that Harvey had not shown it was clearly improbable that the firearm that was possessed was connected with the drug-trafficking offense.

After calculating Harvey's Guidelines range as 188 to 235 months, the district court discussed the § 3553(a) factors. The district court noted, among other considerations, the seriousness of Harvey's offense and Harvey's extensive criminal history:

> THE COURT: . . . I look at a number of factors. The guideline range is the starting point for the analysis. Many times I do start in the middle of the range, as the attorneys understand, because that allows me to go up or down within the range considering those factors of 3553 when a variance is not appropriate. So it's a logical starting point, but that doesn't mean that's where we start and end, but the Court must start at some point, and I do generally start from the middle of the range.
>
> The factors of 3553 that are considered here include, of course, the seriousness of the offense. This was a serious offense.
>
> And when we look at the history and characteristics of the defendant, they are not favorable. The criminal history section is used to calculate in part the guideline range, but the nature of the criminal history is also important because that does -- it gives the Court some indication of issues such as recidivism, has the defendant engaged in the same type of activity in the past, has he received significant penalties for that, and what have been his actions as a result?
>
> For example, in this case the defendant has a conviction, 2004, for possession of controlled substances in the first degree. He had a five-year sentence, but it was suspended. He was remanded shortly thereafter to drug court as a sanction. He was released in November of 2004, remanded back to drug court in June of 2005, released from that program June 2005. His probation was revoked in 2005, and he was again given five years credit with time -- with

credit for time served. He was released in 2005, his parole was revoked in 2007, and he was finally released from that sentence in 2008.

That's not positive. That's an indication that the defendant does not understand his obligations and does not take them seriously when it comes to penalties and sanctions imposed by Courts.

And he has various other convictions that are outlined in the report, including the one that's reflected in paragraph 32 that I alluded to earlier with regard to his prior possession of another 9-millimeter pistol, a Taurus pistol, that was determined to be stolen.

When we look at the criminal history section, it's not positive. It is an indication that the defendant is a substantial likelihood of recidivating when he is released.

The Court does certainly consider the need to provide protection for the public, as well as providing deterrence for the defendant.

So I don't see anything in the presentence report that would cause me to go below the guideline range or, quite frankly, at the bottom of the range as has been requested here.

(R. 105, PID 588-90.)

After considering "all of the information, . . . including the defendant's action, the seriousness of the offense, [and] the need to promote respect for the law," the district court imposed "a sentence of a little above the middle of the guideline range" of 220 months. (*Id.* at PID 590.) The district court finally noted that the sentence was necessary to protect the public and did not create an unwarranted sentencing disparity.

## II. Washington's Sentencing Challenge

Washington appeals only the district court's decision to apply the four-level sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B). "In the specific context of the § 2K2.1(b)(6)(B) firearm enhancement, 'we review the district court's factual findings for clear error and accord 'due deference' to the district court's determination that the firearm was used or possessed 'in

connection with' the other felony, thus warranting the application of the . . . enhancement.'" *United States v. Seymour*, 739 F.3d 923, 929 (6th Cir. 2014) (quoting *United States v. Taylor*, 648 F.3d 417, 432 (6th Cir. 2011)).

The Guidelines provide for a four-level sentencing enhancement "[i]f the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). The commentary to the Guidelines provides that "[s]ubsection[] (b)(6)(B) . . . appl[ies] . . . in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." *Id.* cmt. n.14(B). The commentary to the Guidelines defines "another felony offense" as "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." *Id.* cmt. n.14(C).

The district court identified the felony offense here as trafficking marijuana, and there was sufficient evidence to reasonably conclude that Harvey and Washington were drug trafficking. The text messages on Washington's phone indicated that he had sold drugs in the recent past, which the district court properly considered "circumstantial evidence" that Washington was still dealing drugs. (R. 102, PID 526, 534-35.) Law enforcement had been investigating Harvey for months for drug trafficking, Harvey and Washington made numerous stops that day, and officers seized about 50 grams of marijuana, a distributable quantity, from the Yukon they had been in. Law enforcement also found digital scales in Washington's pocket along with over $800, despite Washington having "never been employed." (R. 94, PID 420, 429.) *See United States v. Burns*, 498 F.3d 578, 581 (6th Cir. 2007). Based on this evidence, it was not clearly erroneous for the district court to conclude that Harvey and Washington had been selling marijuana.

The district court also reasonably concluded that Washington possessed the pistol in connection with drug trafficking. Officers found digital scales and over $800 in Washington's pocket, and the district court stressed that Washington "couldn't have gotten the scales any closer to the firearm that was in his front pocket." (R. 102, PID 536.) The district court inferred that the proximity between the firearm, on one hand, and drug paraphernalia and the large amount of currency, on the other hand, supported the conclusion that the firearm was "used to protect drug trafficking activities." (*Id.*) That inference was reasonable, *see* U.S.S.G. § 2K2.1(b)(6)(B) cmt. n.14(B),[1] and supported by the fact that the pistol's location in Washington's front pocket made it readily accessible to use if needed. *See United States v. Angel*, 576 F.3d 318, 321 (6th Cir. 2009) ("We [ ] examine whether there was easy access, which would support a theory that the guns were used to facilitate the felonious offense." (citation and internal quotation marks omitted)). In short, the district court's application of the § 2K2.1(b)(6)(B) enhancement passes our deferential standard of review.

Washington makes a number of arguments against applying the enhancement in this case, but none can overcome the due deference we accord to the district court's conclusion. Washington first argues that there is insufficient evidence that he was trafficking drugs with Harvey because the officers surveilling Harvey and Washington that day did not observe any drug sales. Washington contends that testimony from officers at the evidentiary hearing on Washington's motion to suppress[2] shows that (1) officers observed Harvey travel to the local mall, to a nearby

---

[1] *See also United States v. Sweet*, 776 F.3d 447, 450 (6th Cir. 2015) ("Comment 14(B) to U.S.S.G. § 2K2.1 indicates that, when the 'other offense' is a drug trafficking offense, the § 2K2.1(b)(6)(B) enhancement applies whenever 'a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia.'" (quoting U.S.S.G. § 2K2.1(b)(6)(B) cmt. n. 14(B))).

[2] Washington filed a motion to suppress the evidence discovered by law enforcement on his person when he was detained and arrested. Harvey also filed a motion to suppress. A magistrate judge presided over an evidentiary hearing on the motions to suppress. The magistrate judge prepared a recommended

restaurant, and then back to his residence with Washington as a passenger; (2) officers saw nothing suspicious; and (3) officers had no reason to believe that Washington was involved in drug trafficking. Even if we accept Washington's characterization of the testimony, it does not follow that Washington did not engage in drug trafficking. The surveilling officers, watching from a distance, had a necessarily limited view of Washington's and Harvey's actions. Moreover, the officers did not begin surveillance until later in the afternoon, and their testimony therefore does not account for Washington's and Harvey's movements prior to that time. Finally, even if the officers did not have reason to believe Washington was involved in drug trafficking, the officers were testifying about their observations before detaining Washington. Unlike the district court, the officers did not have the benefit of knowing that Washington was carrying a pistol, a large amount of cash, and digital scales or that there was a distributable amount of marijuana in the Yukon. In light of these facts, the testimony relied on by Washington does not demonstrate that the district court committed clear error by finding that Washington engaged in drug trafficking with Harvey.

Washington next argues that even if he and Harvey had sold drugs earlier in the day, there was insufficient evidence that Washington possessed the firearm before arriving at Harvey's residence. Washington again relies on testimony from the suppression hearing, pointing to testimony that officers did not observe Washington with a gun earlier in the day and were concerned that Harvey had given Washington a gun in the residence. However, the officers' testimony is of limited value in this context, particularly because the officers were observing Washington at a distance and his gun may have been in his pocket, as it was later. Critically, this testimony is at most only countervailing evidence to the evidence that Washington had the gun,

disposition to the district court, recommending that the district court deny the motions to suppress. The motions to suppress were rendered moot due to Washington's and Harvey's guilty pleas.

8

cash, and scales on his person, that Washington had easy access to the gun, and that no firearms were found in Harvey's residence. That was sufficient evidence for the district court to find the requisite nexus between the gun and drug trafficking.

Washington compares this case to *United States v. Jackson*, 877 F.3d 231 (6th Cir. 2017), but the comparison is inapt. In *Jackson*, this court held that the government failed to show the requisite nexus between a firearm and drug sales. 877 F.3d at 237-43. *Jackson*, however, involved "independent sales of guns and drugs," and there was "no evidence" that the defendant "actually kept a gun near his drugs." *Id.* at 240, 242. Here, there is evidence that the gun and drugs were not independent, but intertwined: Washington kept the gun in his pocket in close proximity to the digital scales and large amount of cash.

The district court's factual findings were not clearly erroneous, and the determination to apply the firearm enhancement under U.S.S.G. § 2K2.1(b)(6)(B) is entitled to due deference. We affirm the district court's decision.

### III. Harvey's Sentencing Challenges

**A. The Two-Level U.S.S.G. § 2D1.1(b)(1) Enhancement**

Harvey first challenges the district court's application of the § 2D1.1(b)(1) enhancement. "A district court's determination that the defendant possessed a firearm during a drug offense is a factual finding that this court reviews under the clearly erroneous standard." *United States v. Wheaton*, 517 F.3d 350, 367 (6th Cir. 2008) (citation omitted).

The Guidelines provide for a two-level increase to the base offense level for drug offenses "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). Courts apply a burden-shifting framework to determine whether the enhancement applies. "Once the government establishes by a preponderance of the evidence that (1) the defendant actually or

constructively 'possessed' the weapon, and (2) such possession was during the commission of the offense, the burden shifts to the defendant to show that it was clearly improbable that the weapon was connected to the offense." *United States v. Catalan*, 499 F.3d 604, 606 (6th Cir. 2007) (citation and internal quotation marks omitted). To satisfy the first step, "all that the government need show is that the dangerous weapon [was] possessed during 'relevant conduct.'"[3] *United States v. Faison*, 339 F.3d 518, 520 (6th Cir. 2003). "The government is not required to show that the firearm possession, once shown, is related to the drug crime." *United States v. Johnson*, 344 F.3d 562, 567 (6th Cir. 2003) (emphasis omitted). "Constructive possession of an item is the ownership, or dominion or control over the item itself, or dominion over the premises where the item is located." *Wheaton*, 517 F.3d at 367 (citation and internal quotation marks omitted) (emphasis omitted).

Once the government meets its burden, "a presumption arises that the weapon was connected to the offense." *Id.* (citation and internal quotation marks omitted). We consider the following factors to determine whether it was appropriate to apply this enhancement: "(1) the type

---

[3] "To determine what constitutes 'relevant conduct' under § 2D1.1, we look to § 1B1.3 . . . ." *United States v. Clisby*, 636 F. App'x 243, 247 (6th Cir. 2016). That section provides that:

> . . . [the] specific offense characteristics . . . shall be determined on the basis of the following:
>
> (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were--
>
> > (i) within the scope of the jointly undertaken criminal activity,
> >
> > (ii) in furtherance of that criminal activity, and
> >
> > (iii) reasonably foreseeable in connection with that criminal activity;
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense . . .

U.S.S.G. § 1B1.3(a).

of firearm involved; (2) the accessibility of the weapon to the defendant; (3) the presence of ammunition; (4) the proximity of the weapon to illicit drugs, proceeds, or paraphernalia; (5) the defendant's evidence concerning the use of the weapon; and (6) whether the defendant was actually engaged in drug-trafficking, rather than mere manufacturing or possession." *United States v. Greeno*, 679 F.3d 510, 515 (6th Cir. 2012) (quotation omitted).

Harvey argues that there was insufficient evidence to conclude that he owned the white Caprice where the pistol was found. However, Harvey admitted to owning a white Caprice and the white Caprice with the loaded pistol was parked directly in front of Harvey's residence and was "[t]he only white Caprice in the area." (R. 105, PID 577.)[4] Based on this evidence, it was not clearly erroneous to conclude that the preponderance of the evidence showed that Harvey owned the white Caprice where the pistol was found and therefore he constructively possessed it.

Harvey did not rebut the presumption that the pistol was connected to drug trafficking by showing that it was clearly improbable. Harvey argues that the pistol was not on his person, in his residence, or near the storage units holding the drugs. However, police recovered over $5,000 in currency from Harvey's residence, and about 50 grams of marijuana in the parked Yukon. The district court reasonably found that the pistol in the Caprice was readily accessible so that Harvey could protect himself, his family, and the proceeds of drug trafficking activity. Finally, Harvey had large amounts of heroin and cocaine, drug paraphernalia, and $26,000 in the storage units, suggesting distribution, and, as we explained above, the district court reasonably concluded that Harvey and Washington were engaged in drug trafficking, rather than possession.[5] The text

---

[4] Because we conclude that Harvey possessed the pistol in the white Caprice, we need not, and do not, address whether the district court properly concluded that Harvey constructively possessed Washington's pistol.

[5] It appears that, at Harvey's sentencing hearing, the district court mistakenly believed that Washington possessed marijuana and admitted it was his. At Washington's later sentencing hearing, Washington's counsel corrected that misunderstanding and the district court "t[ook] that [fact] out of the

messages from Washington's phone indicated that he had been dealing drugs in the recent past; Washington and Harvey made numerous stops before arriving at Harvey's residence; Washington had a digital scale and over $800 in his pockets; and law enforcement recovered 50 grams of marijuana from the Yukon and over $5,000 in currency from Harvey's residence. These factors all suggest that the pistol was connected to drug trafficking, and Harvey has not shown it was clearly improbable. Under these circumstances, the district court properly applied the enhancement under U.S.S.G. § 2D1.1(b)(1).

## B. The Adequacy of the District Court's Sentence Explanation

Harvey next argues that his sentence was procedurally unreasonable because the district court failed to properly explain the basis for his sentence.

The parties dispute the standard of review for this claim. The government contends that Harvey did not preserve his objection to the procedural reasonableness of the sentence and therefore plain-error review should apply. Harvey argues that he adequately preserved his objection. The government appears to be correct. At the end of the sentencing hearing, Harvey's counsel only reiterated Harvey's objection to the firearm enhancement and stated "there's no [*United States v. Bostic*[6]] objections, Your Honor, and no additional findings." (R. 105, PID 597.) Harvey did not raise any concerns with the district court's discussion of the sentencing factors or the adequacy of the court's explanation for his sentence. Nevertheless, under either standard of review, Harvey's sentence was procedurally reasonable.

---

analysis." (R. 102, PID 525.) The district court still concluded that Harvey and Washington had been drug trafficking, and that finding, as we have explained, was not clearly erroneous.

[6] In *Bostic*, this court "announce[d] a new procedural rule, requiring district courts, after pronouncing the defendant's sentence but before adjourning the sentencing hearing, to ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised." 371 F.3d 865, 872 (6th Cir. 2004). "If a sentencing judge asks this question and if the relevant party does not object, then plain-error review applies on appeal to those arguments not preserved in the district court." *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc).

A district court commits a procedural error and abuses its discretion by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007). "To meet the requirement of procedural reasonableness, the sentencing judge must 'set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.'" *United States v. Klups*, 514 F.3d 532, 537 (6th Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)). "[W]hen a sentencing judge independently concurs with the Sentencing Commission's conclusion that a within-Guidelines sentence is appropriate for a given defendant, the explanation for the sentence generally need not be lengthy." *United States v. Wilms*, 495 F.3d 277, 280 (6th Cir. 2007) (citation omitted).

The district court adequately set forth a reasoned basis for the within-Guidelines sentence. The district court first considered the advisory Guidelines range of 188 to 235 months of imprisonment and then discussed and applied the § 3553(a) factors. Harvey asked the court to impose a within-Guidelines sentence of 188 months of imprisonment, and the district court independently found no reason to sentence below the Guidelines range. The district court sentenced Harvey to 220 months imprisonment, "a little above the middle of the guideline range." (R. 105, PID 590.)

Harvey claims that there was "not a thorough discussion of the 18 U.S.C. § 3553(a) factors" (Harvey's Br. at 26), but the district court discussed those factors at length, noting the seriousness of Harvey's crime, Harvey's extensive criminal history, and the need to protect the public and deter him from future conduct. Although Harvey also faults the district court for not informing

13

him of the weight it gave the § 3553(a) factors, the district court was not required to do so.  *See United States v. Trejo–Martinez*, 481 F.3d 409, 413 (6th Cir. 2007) (noting that "[a] [district] court need not explicitly consider each of the § 3553(a) factors" or "provide a rote listing or some other ritualistic incantation of the relevant § 3553(a) factors").  Instead, the question is whether the district court considered the § 3553(a) factors, addressed the relevant factors in reaching the conclusion, and provided a reasoned explanation for the sentence.  *See id.* ("[A] sentence is procedurally reasonable if the record demonstrates that the sentencing court addressed the relevant factors in reaching its conclusion.").  The district court did so here.  The district court looked to the Guidelines range in light of Harvey's own request for a sentence at the bottom end of the range, and it made its own assessment that there was no reason to go below that range.  The district court spoke at length about Harvey's extensive criminal history and expressed concern that it indicated that Harvey had "a substantial likelihood of recidivating when he is released."  (R. 105, PID 590.)  The district court specifically noted that Harvey's continued unlawful conduct showed that he "does not take [his obligations] seriously when it comes to penalties and sanctions imposed by [c]ourts."  (*Id.* at PID 589.)  The district court later specifically identified "[Harvey's] action, the seriousness of the offense, [and] the need to promote respect for the law" as reasons for why it was going to impose a sentence slightly above the middle of the Guidelines range.  (*Id.* at PID 590.)  Thus, the district court provided a reasoned basis for its decision.

## C. The Substantive Reasonableness of Harvey's Sentence

Finally, Harvey argues that his sentence is substantively unreasonable.  "For a sentence to be substantively reasonable, it must be proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)."  *United States v. Young*, 847 F.3d 328, 371 (6th Cir. 2017) (citation and internal

14

quotation marks omitted). There is a presumption that a sentence within the advisory Guidelines is substantively reasonable. *See Vonner*, 516 F.3d at 389. Harvey has the burden of showing substantive unreasonableness. *See United States v. Woodard*, 638 F.3d 506, 510 (6th Cir. 2011).

Harvey has fallen short of overcoming the presumption that his within-Guidelines sentence is reasonable. Harvey asserts that his sentence is substantively unreasonable because (1) no one was injured by his crimes and (2) he was remorseful and apologized during the sentencing hearing. The district court properly considered and discussed the application of the sentencing factors at length, and reasonably sentenced Harvey to a term of imprisonment slightly higher than the middle of the Guidelines range. The district court had sufficient basis to impose the sentence in light of Harvey's criminal history and tendency to recidivate. Moreover, the district court also reasonably noted that Harvey's Guidelines range increased greatly after his guilty plea due to Harvey's own actions. Harvey lost credit for acceptance of responsibility and received an obstruction-of-justice enhancement for instructing his wife to out another witness who was cooperating with the government and then directing her to delete their correspondence. Although Harvey expressed remorse, "[t]he district court judge, unlike the members of this court, had an opportunity to hear from the defendant firsthand," assess Harvey's demeanor and nonverbal communication, and factor that apology into the sentence. *Vonner*, 516 F.3d at 390. Under these circumstances, the district court did not impose a substantively unreasonable sentence.

## IV. Conclusion

For the reasons stated above, we AFFIRM the district court in all respects.